**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROBIN ZAMBRANO,**<br>***on behalf of himself and others similarly situated,***<br><br>**Plaintiff,**<br><br>**- against -**<br><br>**HYPE MANAGED AMENITIES, LLC, and WILLIAM HOLT,**<br><br>**Defendants.** | **Case No: 26-cv-9592**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff ROBIN ZAMBRANO ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, HYPE MANAGED AMENITIES, LLC (the "Corporate Defendant"), and WILLIAM HOLT (the "Individual Defendant," and together with Corporate Defendant, "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff also brings this action on behalf of himself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid overtime, (2) unpaid spread of hours premium, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Plaintiff further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendants retaliated against Plaintiff for complaining of Defendants' unlawful wage practices, seeking from Defendants: (1) economic damages, (2) emotional distress damages, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

***Plaintiff***

***ROBIN ZAMBRANO***

8. Plaintiff ROBIN ZAMBRANO is an adult who resides in Queens County, New York.

9. Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

10. Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***Defendants***

11. At all relevant times, Defendants own and operate a lifestyle and amenities management company under the tradename Hype Managed Amenities. Upon information and belief, Defendants contract with buildings and fitness facilities throughout the State of New York and manage luxury and lifestyle amenities for their residents and members. For example, they provide gym management, maintenance, pool and front desk services for residential and commercial buildings and fitness facilities. At all relevant times, Defendants provide and/or provided services to at least five buildings in New York, including those located at the following addresses: 515 E. 72nd Street, New York, New York 10021, 480 2nd Avenue, New York, New York 10016, and 37 Union Square, New York, New York 10003.

12. At all relevant times, Defendants owned and operated the Hype Managed Amenities as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

13. At all relevant times, the Hype Managed Amenities is operated through the same corporate entity, Corporate Defendant HYPE MANAGED AMENITIES, LLC.

14. At all relevant times, employees and supplies were interchangeable and regularly transferred among the Hype Managed Amenities.

15. At all relevant times, the Hype Managed Amenities was operated under the same wage and hour policies established by Individual Defendant.

16. At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

17. At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18. At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

***HYPE MANAGED AMENITIES, LLC***

19. Corporate Defendant HYPE MANAGED AMENITIES, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 37 Union Square West, 2nd Floor, New York, New York 10003, and an address for service of process located at c/o United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228.

20. At all relevant times, Corporate Defendant HYPE MANAGED AMENITIES, LLC has done business as "Hype Managed Amenities".

21. At all relevant times, Defendants operated the Hype Managed Amenities through Corporate Defendant HYPE MANAGED AMENITIES, LLC.

22. At all relevant times, Corporate Defendant HYPE MANAGED AMENITIES, LLC had an annual dollar volume of sales in excess of $500,000.

23. Corporate Defendant HYPE MANAGED AMENITIES, LLC is a covered "employer" within the meaning of the FLSA and NYLL.

24. Corporate Defendant HYPE MANAGED AMENITIES, LLC employed Plaintiff and similarly situated employees.

25. At all relevant times, Corporate Defendant HYPE MANAGED AMENITIES, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

26. At all relevant times, Corporate Defendant HYPE MANAGED AMENITIES, LLC applied the same employment policies, practices and procedures to all non-exempt employees at the Hype Managed Amenities.

***WILLIAM HOLT***

27. At all relevant times, Individual Defendant WILLIAM HOLT was an owner and operator of Hype Managed Amenities.

28. At all relevant times, Individual Defendant WILLIAM HOLT was the Chief Executive Officer of Hype Managed Amenities.

29. At all relevant times, Individual Defendant WILLIAM HOLT was a principal of each of the Corporate Defendants.

30. Individual Defendant WILLIAM HOLT is a covered "employer" within the meaning of the FLSA and NYLL.

31. Individual Defendant WILLIAM HOLT employed Plaintiff and similarly situated employees.

32. At all relevant times, Individual Defendant WILLIAM HOLT was directly involved in managing the operations of Hype Managed Amenities.

33. At all relevant times, Individual Defendant WILLIAM HOLT had authority over personnel or payroll decisions and employment policies, practices and procedures at Hype Managed Amenities.

34. At all relevant times, Individual Defendant WILLIAM HOLT had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Hype Managed Amenities, including their work assignments, work schedules, pay and responsibilities. On at least one occasion, Individual Defendant WILLIAM HOLT instructed Plaintiff's manager to allow him to take vacation and to pay him for his vacation days.

35. At all relevant times, Individual Defendant WILLIAM HOLT had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Hype Managed Amenities.

36. At all relevant times, Individual Defendant WILLIAM HOLT had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Hype Managed Amenities.

37. At all relevant times, Individual Defendant WILLIAM HOLT had the power to maintain employment records, including time and/or wage records of employees at Hype Managed Amenities.

## FLSA COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of himself and all similarly situated current and former non-exempt hourly-paid employees employed at Hype Managed Amenities, owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of the Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

39. At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members the full and proper overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

40. All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

41. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

42. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

43. Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of himself and a class of persons consisting of all current and former non-exempt hourly-paid employees employed at Hype Managed Amenities, owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of the Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

44. Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

45. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

46. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

47. Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

48. Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay overtime wage, (ii) failing to pay spread of hours premium, (iii) failing to provide proper wage notices, and (iv) failing to provide proper wage statements, in violation of the NYLL.

49. Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

50. Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

51. Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

52. Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

53. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

54. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

55. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

56. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

57. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a. Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b. Whether Defendants required Plaintiff and Class Members to work hours in excess of forty (40) per workweek;

c. Whether Defendants paid Plaintiff and Class Members their full and proper overtime wages for hours worked in excess of forty (40) per workweek;

d. Whether Defendants required Plaintiff and Class Members to work over a spread of ten (10) hours in a given workday;

e. Whether Defendants paid Plaintiff and Class Members a spread-of-hours premium for workdays they worked over a spread of ten (10) hours, as required by the NYLL;

f. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

g. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

58. From in or around July 2024, Plaintiff was employed by Defendants as a porter at one of the buildings managed by Hype Managed Amenities. At all relevant times, Plaintiff worked at the building located at 515 E. 72nd Street, New York, New York 10021. On or about June 12, 2026, Defendants terminated Plaintiff in retaliation.

59. At all relevant times, Plaintiff regularly worked from 2:00pm to 10:00pm, on Mondays to Fridays, and worked either or both of Saturdays and Sundays, from 8:00am to 8:00pm, for a total of fifty-two (52) to sixty-four (64) hours per week. At all relevant times, Plaintiff worked without any uninterrupted meal breaks. Based on Plaintiff's observations, FLSA Collective

Members and Class Members worked similar hours as Plaintiff, including overtime hours in excess of forty (40) hours per workweek, and without uninterrupted meal breaks.

60. From in or around July 2024 through August 2025, Defendants compensated Plaintiff on a straight-time basis at an hourly rate of $20.00 per hour for all hours worked, regardless of his overtime hours worked. From in or around September 2025 through the end of Plaintiff's employment, Defendants compensated Plaintiff on a straight-time basis at an hourly rate of $21.50 per hour for all hours worked, regardless of his overtime hours worked. Based on Plaintiff's observations and conversations, FLSA Collective Members and Class Members worked overtime hours but were similarly not paid at time-and-a-half their regular rate of pay for their overtime hours.

61. Shortly after being hired, in or around August or September 2024, Plaintiff confronted his manager, Marquis Foy, as to why the employees were not paid overtime. Mr. Foy responded that he was only authorized to pay them on a straight-time basis and not their overtime rate. Based on this conversation, FLSA Collective Plaintiffs and Class Members were subject to a company-wide policy where they were not paid their full and proper overtime wages for overtime hours worked.

62. Throughout Plaintiff's employment with Defendants, Plaintiff was never paid the spread-of-hours premium for workdays that exceeded a spread of ten (10) hours per day. Based on Plaintiff's observations, Class Members also regularly worked ten (10) hour workdays but were not compensated a spread-of-hours premium.

63. Throughout his employment with Defendants, Plaintiff and the Class did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL. At all times, Defendants were further required to notify their

employees in writing of any changes to the requisite information set forth in a wage notice, including changes to their pay day. At all relevant times throughout Plaintiff and Class Members' employment, Defendants failed to inform them of changes to their pay day and/or pay frequency, and as a result, Plaintiff and the Class were injured as they did not receive proper notice of their overtime rate, which resulted in an underpayment of their overtime wages.

64. Throughout his employment with Defendants, Plaintiff and the Class did not receive proper wage statements from Defendants. At all relevant times, Plaintiff and Class Members regularly worked but did not receive wage statements with their full and proper pay, including compensation that should have been paid at time-and-a-half. Due to Defendants' failure to provide proper wage statements informing them of their overtime rate and their overtime hours worked, as well as spread of hours, Plaintiff and the Class were injured and suffered financial harm from the underpayment of wages. Specifically, Defendants' wage statements that were provided to Plaintiff and the Class did not state their full and proper pay.

65. Based on Plaintiff's observations at Hype Managed Amenities, Defendants failed to pay Plaintiff, FLSA Collective Members and Class Members their full and proper overtime wages.

66. Based on Plaintiff's observations at Hype Managed Amenities, Defendants failed to pay Plaintiff, FLSA Collective Members and Class Members their spread-of-hours premium.

67. Based on Plaintiff's observations at Hype Managed Amenities, Defendants failed to provide proper wage notices to Plaintiff and Class Members.

68. Based on Plaintiff's observations at Hype Managed Amenities, Defendants failed to provide proper wage statements to Plaintiff and Class Members. The wage statements that were

provided to Plaintiff and Class Members failed to accurately reflect their proper overtime pay and spread-of-hours premiums.

69. Defendants knowingly and willfully operated their business with a policy of failing to pay proper overtime to Plaintiff, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

70. Defendants knowingly and willfully operated their business with a policy of failing to pay the spread-of-hours premium to Plaintiff and Class Members, in violation of the NYLL.

71. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

72. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

* * *

73. In or around April 2025, Plaintiff complained again to Mr. Foy that he should be paid at the overtime rate. Mr. Foy once again responded that he was only authorized to compensate Plaintiff at the regular rate of pay for all hours. Plaintiff was not given the option to reduce his work hours even though Defendants refused to compensate him at the proper time-and-a-half rate.

74. Then in or around September 2025, Plaintiff was scheduled for several doctor’s appointments and requested time off. Mr. Foy then lied to Plaintiff that he neither had sick time nor did the company provide paid time off. Plaintiff then complained to Mr. Foy about working overtime without overtime pay and that he should be able to take time off to see the doctor. Mr. Foy then told Plaintiff that he was causing problems and to stop asking. Later, it became clear that

Mr. Foy was denying him time off because he wanted Plaintiff to continue working significant hours without proper compensation.

75. Since September 2025, Mr. Foy not only continued to undercompensate Plaintiff for his actual hours worked but obstructed him from exercising employment rights—requiring Plaintiff to repeatedly defend his right to wages he earned and time off that he was entitled to, including vacation and sick days. Plaintiff was labeled as a trouble maker for continuing to defend his employment rights.

76. For example, in or around December 2025, Plaintiff requested to take 30 days off, which was 15 days of paid time off and 15 days of unpaid time off. The days were approved but Mr. Foy informed Plaintiff that the entire month would have to be unpaid as Plaintiff already took time off. Plaintiff responded that he had not taken any time off thus far and had not used up his vacation time. Mr. Foy then attempted to show Plaintiff computer records that Plaintiff was allegedly paid for time off already but no such records existed and Plaintiff continued to insist that he had not used up his vacation time. The dispute was escalated and Individual Defendant William Holt was called, and Mr. Holt confirmed that he did not have a record of paying Plaintiff for vacation days and instructed Mr. Foy to allow Plaintiff to take his vacation. However, Plaintiff was not paid for his vacation time until January 2026, making it appear as though he took time off in 2026, instead of for the calendar year 2025—causing him to lose his paid time off from 2025.

77. Mr. Foy's mistreatment of Plaintiff continued until he was terminated on or about June 12, 2026. The workplace harassment and mistreatment were not isolated incidents but an ongoing pattern to force Plaintiff to quit. Mr. Foy regularly cursed at Plaintiff and also assigned Plaintiff undesirable work outside of his position.

78. On or about June 12, 2026, Plaintiff and a co-worker were setting up an outdoor event for the building when it started to rain. Mr. Foy instructed them to move faster to bring everything inside. When Plaintiff suggested using a cart to load and move everything faster, Mr. Foy attempted to hit Plaintiff before his co-worker stepped in between them but managed to throw a chair at Plaintiff, where the chair hit his foot. Plaintiff was called all sorts of names by Mr. Foy, including “stupid,” “idiot,” “fool,” and “son of a bitch” and was told that he was “trash” and “useless.”

79. On or about June 15, 2026, Plaintiff complained to the building administrator, Defendants’ client, regarding the mistreatment and retaliatory hostile work environment and they informed Plaintiff that they were going to reach out to Hype Managed Amenities. On or about June 23, 2026, Mr. Foy terminated Plaintiff by email.

80. Plaintiff was repeatedly characterized as a trouble maker for raising concerns regarding unpaid overtime and trying to enforce his workplace rights. For several months, Plaintiff was subjected to ongoing harassment, intimidation and a hostile work environment to pressure Plaintiff into resigning rather than address the workplace complaints. When Plaintiff finally escalated his complaints to Defendants’ client, the building administrator, Plaintiff was terminated in retaliation.

## **STATEMENT OF CLAIMS**

### **FIRST CAUSE OF ACTION**
***Unpaid Wages in Violation of the Fair Labor Standards Act***

81. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

82. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

83. Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

84. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

85. Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the proper overtime for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

86. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

87. As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied overtime in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

88. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
## *Unpaid Wages in Violation of the New York Labor Law*

89. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

90. At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

91. Defendants failed to pay Plaintiff and Class Members the full and proper overtime to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

92. Defendants failed to pay Plaintiff and Class Members the spread-of-hours-premium.

93. Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

94. Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of

work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

95. Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

96. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid overtime, unpaid spread-of-hours premium, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## THIRD CAUSE OF ACTION
***Retaliation in Violation of the Fair Labor Standards Act***

97. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98. Plaintiff is an employee and a protected person within the meaning of the FLSA and Defendants are covered employers under the FLSA.

99. The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

100. Defendants unlawfully retaliated against Plaintiff on the basis of his protected activities under the FLSA by terminating Plaintiff's employment following their receipt of Plaintiff's workplace-related complaints, including of unpaid wages.

101. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

102. Due to Defendants' violation of FLSA, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) emotional distress damages, (3) liquidated damages; and (4) attorneys' fees.

## FOURTH CAUSE OF ACTION
### *Retaliation in Violation of the New York Labor Law*

103. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104. Plaintiff is an employee and a protected person within the meaning of the NYLL and Defendants are covered employers under the NYLL.

105. The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

106. Defendants unlawfully retaliated against Plaintiff on the basis of his protected activities under the NYLL by by terminating Plaintiff's employment following their receipt of Plaintiff's workplace-related complaints, including of unpaid wages.

107. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

108. Due to Defendants' violation of NYLL, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) emotional distress damages, (3) liquidated damages; and (4) attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d. An award of unpaid overtime due under the FLSA and NYLL;

e. An award of unpaid spread-of-hours premium due under the NYLL;

f. An award of liquidated damages as a result of Defendants' willful failure to pay overtime and spread-of-hours, pursuant to the FLSA or NYLL;

g. Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

h. Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

i. An order awarding relief for Defendants' retaliation, including but not limited to lost compensation and emotional distress damages, under the FLSA and NYLL;

j. Pre-judgment and post-judgment interest;

k. Reasonable attorneys' fees and costs of this action;

l. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

m. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

n. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: November 2, 2026

Respectfully submitted,

**BROWN KWON & LAM, LLP**

By: */s/ Clara Lam*

Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*